**Affirmed and Opinion filed March 19, 2015.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-13-00554-CR

---

**KERRY DEAN PARKS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 351st District Court
Harris County, Texas
Trial Court Cause No. 1385381**

---

## O P I N I O N

Appellant Kerry Dean Parks was charged with causing serious bodily injury to a child. A jury found appellant guilty, determined that he used or exhibited a deadly weapon during the commission of the offense or in immediate flight therefrom, and assessed his punishment at life in prison. In his first two issues, appellant contends he received ineffective assistance of counsel because his trial counsel failed to move to suppress, or request a limiting instruction regarding, evidence of alleged extraneous conduct. In his third issue, appellant contends the

trial court erred in permitting a testifying psychologist to remain in the courtroom during the complainant's testimony. And in his fourth issue, appellant asserts the court erred in permitting an investigating police officer to explain his feelings regarding the complainant and the complainant's injuries. We affirm.

## I. Background

Appellant married complainant's mother in 2010 and subsequently adopted complainant that same year. Complainant was thirteen years old at the time of trial in 2013. He testified that appellant required that he clean the family house several times a day and, when he failed to do so to appellant's satisfaction, appellant would spank him with a leather belt. At first, complainant was fully clothed during the spankings, but appellant subsequently required complainant to strip to his underwear or even to his bare skin. Complainant stated that appellant sometimes would tie him to a chair. The spankings hurt and made complainant cry. According to complainant, appellant would hit him ten to eleven times with a belt on average during these spankings. By the time school started in the fall of 2011, appellant was spanking complainant in this manner three to five times a day. The spankings initially caused only red marks on complainant's skin, but later they caused bleeding. At some point, appellant began applying substances to complainant's wounds, including rubbing alcohol, Epson salts, table salt, and vinegar. Complainant testified that the application of the substances to the wounds caused significant pain.[1]

During the fall semester, teachers at complainant's school began noticing complainant limping when he walked. When asked what was wrong, complainant

---

[1] As will be discussed in more detail below, Dr. Marta Rosenberg, a psychologist who treated complainant and was also a testifying witness at trial, was permitted to stay in the courtroom over objection during complainant's testimony.

2

told them that his dog had bitten him on his bottom and the wound hadn't healed. When complainant came back to school after the winter break, in addition to his limp, he had several open wounds on his head. Complainant told his teachers at the time that he had had an accident on a scooter, but he testified at trial that the head wounds were caused by appellant pushing complainant's head into a column of sheetrock near the stairs in his home. Concerned, the school's assistant principal had the school's counselor make a report to Child Protective Services regarding complainant's injuries. In response to this report, Sergeant William Barton came to the school and spoke with complainant.

Barton testified that when complainant first entered the room, he declined Barton's invitation to sit, saying he preferred to remain standing. Barton noticed unusual bulges in the back of complainant's baggy pants. He also noticed a fairly recent wound on complainant's head. When Barton questioned complainant about any injuries he might have, complainant told the officer his dog had scratched him on the buttocks and he had fallen off an electric scooter he received for Christmas. Barton said that while giving these answers, complainant's voice would get very soft and he would look down and away. Barton explained that in his experience as a police officer, when someone cannot make direct eye contact while answering a question, it is an indication they are not telling the complete truth or are trying to hide something. Barton told complainant that he knew complainant was not telling the whole truth. According to Barton, complainant then told him about the spankings he received from appellant.

Barton requested another officer to come to the school with a camera to record complainant's injuries. When the time came to take the photographs, Barton discovered that complainant's wounds, running from the small of his back to about halfway down his thighs, were covered in gauze bandages, some of which

3

were stained and stuck to complainant's skin from the seeping of the wounds. An ambulance was called and complainant was taken to Texas Children's Hospital, where medical personnel worked for several hours to remove the bandages. Over objections for relevance and nonresponsiveness, Barton testified that he stayed with complainant until 8 p.m. because he wanted to comfort complainant while he received treatment.

Complainant was subsequently transferred to Shriner's Children's Hospital, where he received several skin grafts and physical therapy. A physician who treated complainant's injuries at Texas Children's Hospital, Dr. Rohit Shenoi, testified that for the injuries to have been caused by a belt, the spankings would have to have occurred over a long period of time and with "extraordinary force." At first, he thought the wounds were burns but stated that the "repeated application of some chemical products" or Epson salts could cause the same effect. He saw no evidence to support the explanation offered by complainant's mother that a dog had bitten complainant.

Another physician, Dr. Carlos Jiminez, who treated complainant at Shriner's Hospital, explained that he could tell complainant's injuries had been inflicted over a significant period of time because different areas of skin were in different stages of healing. He described some of the skin as dead and stated that some of the wounds were infected. According to Jiminez, the wounds covered twelve percent of complainant's body. He dismissed the possibility that the injuries were related to a dog bite and concluded instead that they were consistent with repeated beatings with a leather belt. Both physicians described complainant's wounds as "serious bodily injury."

Although appellant himself did not testify, defense counsel developed his theory of the case largely through cross-examination of complainant and other

4

witnesses called by the prosecution. It was the defense's position that complainant received bites or scratches on his backside from a dog and that these wounds subsequently became irritated and infected due to complainant's chronic bed-wetting problem during that period of time. The defense further sought to emphasize the infection as the primary cause of damage to complainant's skin and suggested that, while the use of Epson salts on the wounds may not have been a proper remedy, it was a common one.

The jury found appellant guilty of causing serious bodily injury to a child younger than fifteen years of age and also found that he "used or exhibited a deadly weapon, namely, a belt or vinegar or salt or alcohol, during the commission of the offense . . . or during the immediate flight therefrom."[2] The jury assessed appellant's punishment at life in prison.

## II.  Assistance of Counsel

In his first issue, appellant contends that he received ineffective assistance of counsel because his trial counsel failed to move to suppress evidence of an alleged extraneous act or ask for a limiting instruction regarding the jury's consideration of that evidence. In his second issue, appellant asserts counsel's failures prejudiced his defense to such a degree that a new trial is warranted.

### A.  Standards of Review

An appellate court reviews the effectiveness of counsel according to the two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668, 689 (1984). Under this standard, a defendant must (1) demonstrate that trial counsel's performance was deficient and fell below an objective standard of reasonableness, and (2) "affirmatively prove prejudice by showing a reasonable probability that,

---

[2] There was testimony from Barton as well as the treating physicians in support of finding that appellant used a deadly weapon in committing the offense.

5

but for counsel's unprofessional errors, the result of the proceeding would have been different." *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999)

Review of a trial counsel's performance is highly deferential, as there is a "strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance; that is, [appellant] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689. Ordinarily, trial counsel should be afforded an opportunity to explain his or her actions, and in the absence of such opportunity, an appellate court should not find deficient performance unless the challenged conduct was so outrageous that no competent attorney would have engaged in it. *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005). To establish ineffective assistance of counsel based on a failure to object, appellant must demonstrate that the trial court would have committed harmful error in overruling an objection had trial counsel made one. *See DeLeon v. State*, 322 S.W.3d 375, 381 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd). The appellant bears the burden of proving by a preponderance of the evidence that counsel was ineffective, and any allegations of ineffectiveness must be firmly founded in the record. *Thompson*, 9 S.W.3d at 813.

### B. Analysis

Appellant specifically complains about counsel's failure to react to the introduction of evidence indicating appellant caused head injuries to complainant by pushing complainant's head into a column. This evidence came in through four sources:

- a teacher at complainant's school, who noticed complainant came back to school after the winter break with not only a continuing limp but also open wounds on his head;

- Barton, who testified complainant initially told him the head injuries were caused when he fell off his scooter but later said appellant pushed his head into a column;

- a physician, who consulted on complainant's injuries and was offered as an expert on child abuse at trial and who testified that he did not believe complainant's head injuries were caused either by falling off a scooter or hitting his head on a column but did believe that complainant was abused; and

- Dr. Jiminez, who treated complainant at Shriner's Hospital and opined complainant's injuries all resulted from abuse.[3]

Appellant maintains that such testimony was evidence of an unadjudicated extraneous offense because he was charged with striking complainant with a belt and applying certain substances to complainant's wounds and not with pushing complainant's head into a column. Because his trial counsel failed to object to this evidence or request a limiting instruction concerning its use, appellant contends that he received ineffective assistance which prejudiced his defense.

Under Texas Rule of Evidence 404(b), evidence of extraneous offenses is not admissible at the guilt-innocence phase of trial to prove that a defendant committed the charged offense in conformity with a bad character. Tex. R. Evid. 404(b); *Devoe v. State*, 354 S.W.3d 457, 469 (Tex. Crim. App. 2011). Such evidence may be admissible, however, if it has relevance for other purposes apart from character conformity. *Devoe*, 354 S.W.3d at 469. Evidence of another crime may be admissible as "same-transaction contextual evidence," as when different crimes are intermixed in such a way that full proof by testimony of any one of them cannot be given without revealing the others. *Id*. The jury is entitled to know all relevant surrounding facts and circumstances of the charged offense. *Id*. Only if the facts and circumstances of the charged offense would make little or no

---

[3] Each of the four witnesses was shown photographs of complainant's head injuries, which were also admitted into evidence.

sense without also bringing in the same-transaction contextual evidence should such evidence be admitted. *Id.* The necessity of this narration is an "other purpose apart from character conformity" for which same-transaction contextual evidence is admissible under Rule 404(b). *Id.* When evidence is admitted on this basis, the defendant is not entitled to any limiting instruction concerning the use of that evidence under Rule 404(b). *Delgado v. State*, 235 S.W.3d 244, 253 (Tex. Crim. App. 2007).

A trial court's ruling on the admissibility of extraneous offenses is reviewed under an abuse-of-discretion standard. *Devoe*, 354 S.W.3d at 469. As long as the trial court's ruling is within the "zone of reasonable disagreement," there is no abuse of discretion and the trial court's ruling will be upheld. *Id.* As stated above, in order to establish ineffective assistance of counsel, appellant must demonstrate that the trial court would have committed harmful error in overruling an objection had trial counsel made one. *See DeLeon*, 322 S.W.3d at 381.

Here, the State argues that the testimony of the first two witnesses to discuss complainant's head injuries, the teacher and Barton, was necessary as same-transaction contextual evidence in order for the jury to understand how the investigation into complainant's injuries came about. We agree. It is clear from the testimony that although teachers had noticed complainant walking with a limp in the fall of 2011, it was not until he came to school with head injuries after the winter break that school personnel became concerned enough to report the matter to authorities. *Cf. Greene v. State*, 287 S.W.3d 277, 283 (Tex. App.—Eastland 2009, pet. ref'd) (holding extraneous offense evidence that explained why defendant was under investigation at time police discovered evidence for crime charged was admissible as same transaction contextual evidence); *Victor v. State*, 995 S.W.2d 216, 223-24 (Tex. App.—Houston [14th Dist.] 1999, pet. ref'd)

8

(same).  Without this testimony, the jury would have been left without an explanation as to why Barton came to the school to talk to complainant.  Because admission of this evidence over an objection would not have been error, counsel's failure to object did not constitute ineffective assistance.  *See DeLeon*, 322 S.W.3d at 381.  Appellant would not have been entitled to a limiting instruction concerning the jury's consideration of the evidence.  *See Delgado*, 235 S.W.3d at 253.

The testimony from the two physicians regarding complainant's head injuries was not tied to the impetus for the initial investigation.  However, by the time the physicians testified, appellant's counsel already had begun developing the defensive theory that complainant had been scratched or bitten by his new dog and that the damaged skin had been irritated and become infected due to frequent and prolonged contact with urine.  The physicians' testimony therefore was admissible as rebuttal evidence.  *See Bass v. State*, 270 S.W.3d 557, 562-63 (Tex. Crim. App. 2008) (holding extraneous offense evidence was admissible to rebut defensive fabrication theory); *Wheeler v. State*, 67 S.W.3d 879, 888-89 & n.22 (Tex. Crim. App. 2002) (holding extraneous offense evidence was admissible to rebut defensive theories, including that defendant was framed for charged offense and lack of opportunity).  It is at least within the realm of reasonable disagreement that evidence indicating complainant also had head injuries caused by child abuse was relevant to rebutting the defensive theory and therefore admissible.  We therefore cannot say that appellant's trial counsel was deficient in failing to object to admission of this evidence. *See DeLeon*, 322 S.W.3d at 381.

Unlike with same-transaction contextual evidence, when extraneous offenses are used as rebuttal evidence, the defendant may be entitled to a limiting instruction.  *See Mason v. State*, 416 S.W.3d 720, 742 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd).  Although appellant's counsel did not request such an

instruction in this case, the record is silent as to what reasons he may have had for failing to do so. Generally, when the record is silent concerning the motives of trial counsel, we will not speculate on possible motives and the strong presumption of reasonable performance cannot be overcome unless the challenged conduct was so outrageous that no competent attorney would have engaged in it. *See Goodspeed*, 187 S.W.3d at 392; *Green v. State*, 191 S.W.3d 888, 895 (Tex. App.— Houston [14th Dist.] 2006, pet. ref'd). Appellant argues here that no competent attorney would have failed to request a limiting instruction under these circumstances, but on this silent record, appellant has not met his burden of showing that his counsel's representation was ineffective.[4] *See, e.g., Garcia v. State*, 887 S.W.2d 862, 881 (Tex. Crim. App. 1994) (holding trial counsel's failure to request a limiting instruction did not constitute ineffective assistance because counsel did not want to draw more attention to the incriminating evidence); *Ali v. State*, 26 S.W.3d 82, 88 (Tex. App.—Waco 2000, no pet.) (holding defendant did not establish ineffective assistance of counsel where counsel failed to request

---

[4] At least two Texas courts have held contrary to appellant's contention under similar circumstances. In *Ex parte Varelas*, the State presented evidence that the defendant, before committing the charged offense of capital murder, had committed specific extraneous bad acts against the child complainant. 45 S.W.3d 627, 630 (Tex. Crim. App. 2001) (orig. proceeding). On direct appeal, however, the Court declined to speculate regarding why trial counsel may have failed to request a limiting instruction. *Id*. at 632. In a subsequent habeas corpus proceeding, the Court reversed and remanded the case based on an affidavit by trial counsel stating that his failure to request an instruction was not based on trial strategy but "was simply an oversight." *Id*. In *McNeil v. State*, the jury also heard testimony concerning extraneous acts of violence committed against a child complainant. No. 01-13-00234-CR, 2014 WL 6601514, at *1-2, 3-4 (Tex. App.—Houston [1st Dist.] Nov. 20, 2014, pet. filed); *see also id*. at 13 (Jennings, J., concurring) (detailing evidence at issue). However, the First Court of Appeals in that case dealt with a record that was not silent but contained a discussion before the bench in which defense counsel explained that he did not want an instruction because he did not wish to attract any further attention to the child's other injuries. *Id*. at *4-5 (holding in light of this professed trial strategy that defendant failed to establish the first *Strickland* prong of deficient performance). Together, *Varelas* and *McNeil* demonstrate that appellant's counsel may have had strategic reasons for not requesting a limiting instruction.

limiting instruction but record was silent as to reason for that failure).[5] Accordingly, we overrule appellant's first two issues.

## III. Witness Sequestration

In issue three, appellant contends the trial court erred in permitting a testifying psychologist, Dr. Mary Rosenberg, to remain in the courtroom during the complainant's testimony. At the beginning of trial, the witness sequestration rule, requiring the exclusion of witnesses from the courtroom so that they cannot hear the testimony of other witnesses, was invoked. Tex. R. Evid. 614; *see also* Tex. Code Crim. Proc. Art. 36.03 (concerning invocation of the witness sequestration rule). Before complainant testified, the prosecutor requested that Rosenberg be permitted to remain because complainant was thirteen years old at the time of trial. Defense counsel objected based on the rule, indicating that complainant had other caregivers present in the courtroom. The prosecutor then explained:

> The—the other people in the courtroom—I guess he's talking about the CPS worker and an aunt, who have really no idea of what [complainant] has been through at Shriners Hospital. The psychologist knows exactly what he's been through. And it is some level of comfort for the child. Her testimony is not going to be affected by what the child says. And the CPS worker is a witness and will be leaving the courtroom.

The trial court overruled the objection and permitted Rosenberg to remain.

---

[5] We additionally note in this case that one of the physicians who spoke regarding complainant's head injuries cast doubt on complainant's later explanation that appellant pushed his head into a column. Counsel may therefore have not wanted any instruction limiting the jury's use of this evidence.

Under his first two issues, appellant also complains that trial counsel did not file a motion in limine requesting the State approach the bench before offering extraneous offense evidence. Appellant, however, does not make any arguments specific to this contention or cite relevant case law. *See* Tex. R. App. P. 38.1(i) (requiring that appellant's brief contain "clear and concise argument for the contentions made, with appropriate citations to authorities and to the record"). Consequently, we will not address the merits of this contention.

The purpose of the rule is to prevent the testimony of one witness from influencing the testimony of another. *Russell v. State*, 155 S.W.3d 176, 179 (Tex. Crim. App. 2005). Rule 614 contains four exceptions to the witness exclusion requirement, including an exception for "a person whose presence is shown by a party to be essential to the presentation of the party's cause." *Id*. 614(3). The party seeking to exempt a witness has the burden of showing that the claimed exception applies. *Russell*, 155 S.W.3d at 180. Enforcement of the rule and its exceptions lies within the sound discretion of the trial court. *Caron v. State*, 162 S.W.3d 614, 618 (Tex. App.—Houston [14th Dist.] 2005, no pet.).

Appellant contends that the prosecutor made an inadequate showing that Rosenberg's presence was essential to the State's case. Indeed, as set forth above, the State merely suggested that Rosenberg knew what complainant had undergone at the hospital and her presence might be of some comfort to the child. This conclusory statement does not explain how or why her presence was essential to the State's case. *Cf. Allen v. State*, 436 S.W.3d 815, 822-23 (Tex. App.—Texarkana 2014, pet. ref'd) (holding State's conclusory statement was inadequate to show witness's presence was essential to its case); *White v. State*, 958 S.W.3d 460, 462 (Tex. App.—Waco 1997, no pet.) (same).[6] However, even assuming the trial court erred in permitting Rosenberg to stay in the courtroom, violation of an evidentiary rule is non-constitutional error and will be disregarded unless it affected the appellant's substantial rights; thus, we need not reverse if, after examining the record as a whole, we have fair assurance that the error did not

---

[6] At one point during Rosenberg's testimony, the prosecutor suggested she was permitted to stay for complainant's testimony because she was an expert. This basis for exempting Rosenberg from the rule was not raised at the time she was exempted; moreover, the simple fact she was to offer expert testimony in addition to fact testimony did not exempt her from the rule. *See Allen*, 436 S.W.3d at 823. In addition, although legal guardians of crime victims should generally be permitted to stay in the courtroom, there is no indication in the record that Rosenberg was complainant's legal guardian. *See* Tex. Code Crim. Proc. art. 36.03(a).

influence the jury's deliberations to appellant's detriment or had but a slight effect. *See, e.g., Allen*, 436 S.W.3d at 823; *see also* Tex. R. App. P. 44.2(b). A key factor in determining harm when a witness was erroneously allowed to remain in the courtroom in violation of the witness sequestration rule is whether the witness's testimony was influenced by the testimony the witness heard. *Russell*, 155 S.W.3d at 181-82.

Appellant argues that Rosenberg's subsequent testimony was clearly influenced by having heard appellant testify. Specifically, he points to the following exchange during the prosecutor's direct examination of Rosenberg:

> Q. Dr. Rosenberg, you were excluded from the Rule . . . and you were allowed to be in the room as [complainant] testified. Did you make any observations of [complainant] during the time that he testified?
>
> A. I think he handled it very well, but as the questions progressed he seemed to withdraw more.
>
> Q. And what about his behavior made you think he was withdrawing?
>
> A. He got quiet, he looked down.
>
> Q. And would you characterize that as a normal response?
>
> A. Yes.
>
> [Defense Counsel]: Judge, I'll object. It's speculation as to what's normal on the part of a specific individual.
>
> THE COURT: Overruled.

We begin our harm analysis by noting that in this excerpt, Rosenberg did not specifically indicate whether she believed complainant was being truthful in his testimony; she merely suggested that his apparent withdrawal on the witness stand was a "normal response" to the circumstances. This brief testimony was neither dwelt on at the time, nor was it raised at any other point in the proceedings, including during the State's closing argument. *See Motilla v. State*, 78 S.W.3d

352, 356 (Tex. Crim. App. 2002) (noting that whether the State emphasized error can be a factor in harm analysis). More significant by far was Rosenberg's subsequent testimony—elicited by defense counsel—that she believed complainant was telling the truth when he told her that appellant had abused him. The other testimony elicited by the prosecutor from Rosenberg covered her treatment of complainant in the hospital, statements made by appellant regarding complainant's injuries, and descriptions of complainant's apparent pain and anxiety while in the hospital. This testimony was clearly based on Rosenberg's own observations during complainant's stay in the hospital and was not based on his testimony at trial. *See Allen*, 436 S.W.3d at 824-25 (holding error in exempting expert from the rule was harmless in part because focus of expert's testimony was earlier interview with child complainant and not complainant's trial testimony); *see also Russell*, 155 S.W.3d at 182-83 (holding error in exempting police office from rule was harmless even though officer corroborated other officer's testimony and contradicted appellant's testimony).

Additionally, the State's case against appellant was relatively strong, based primarily on complainant's own testimony, the history of how his injuries were discovered, and the testimony of several treating and consulting physicians. The physicians in particular expressly rejected the defense's suggestion that the injuries may have been caused by a dog scratch or bite and subsequent infection and irritation and, instead, concluded that the injuries were caused by repeated spankings with a leather belt and application of irritating substances to the wounds. Considering the record as a whole, we have fair assurance that any error in exempting Rosenberg from the witness sequestration rule did not influence the jury's deliberations to appellant's detriment or had but a slight effect. *See Allen*, 436 S.W.3d at 824-25 (holding error in exempting expert from the Rule was

harmless in light of entire trial record).  Accordingly, we overrule appellant's third issue.

## IV.  Explanation of Officer's Feelings

Lastly, in issue four, appellant asserts the trial court erred when it permitted Barton to testify regarding his feelings about complainant and the complainant's injuries.  Appellant contends that this testimony was not relevant to any issue in the case and served only to inflame the passions of the jury.  Generally, relevant evidence is admissible and irrelevant evidence is inadmissible.  *See* Tex. R. Evid. 402.  Relevant evidence is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence."  *Id*. 401.  We review a trial court's determination as to the relevance of evidence under an abuse-of-discretion standard and will uphold the trial court's ruling so long as it is within the "zone of reasonable disagreement."  *Allcott v. State*, 158 S.W.3d 73, 74-5 (Tex. App.—Houston [14th Dist.] 2005, no pet.).

Specifically, appellant cites the following exchange during the prosecutor's direct examination of Barton:

> Q.  While they were removing the outer bandages, did you observe [complainant]'s facial expressions?
>
> A.  Yes, ma'am.  Numerous times he grimaced in pain.
>
> Q.  By the time you left the hospital at 8:00 p.m. that night, had these bandages been removed?
>
> A.  No, ma'am, they had not.
>
> Q.  Sergeant, in your 33 years of investigating child abuse cases and other cases, how would you characterize this case?
>
> [Defense Counsel]:  Judge, I'll object.  Relevance as to comparison to any other cases, as well as no proper designation of this witness as an expert.

15

THE COURT:  Sustained.

Q.  Sergeant, why did you stay at Texas Children's until eight o'clock?

[Defense Counsel]:  Object to relevance as to why he stayed.

THE COURT:  Overruled.

You may answer that question, sir.

A.  Because I've got four kids. They tell you—

[Defense Counsel]:  Objection.  Nonresponsive to anything after he has four kids.

THE COURT:  Overruled.

You may finish your answer.

[Defense Counsel]:  I'll object to the narrative.

THE COURT:  Overruled.

You may finish your answer.

A.  They tell you in law enforcement:  Don't get involved, don't let your personal feelings get into it.  Seeing that, I couldn't help but stay and make sure that he's comforted.

Defense counsel's only relevance objection which was not sustained in this exchange was to the question regarding why Barton stayed at the hospital as long as he did.  One of the key issues in this case was the seriousness of complainant's injuries, as appellant was charged with causing serious bodily injury to complainant.  *See* Tex. Penal Code § 22.04(a).  The Penal Code defines "serious bodily injury" as "bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ."  *Id*. § 1.07(46).  The fact that Barton felt the need to stay late at the hospital with complainant speaks to the seriousness of the child's injuries.  The prosecutor's question was therefore relevant to a fact that is of consequence to the determination of the action.  *See* Tex. R. Evid. 401; *Thompson v. State*, 274 S.W.3d 776, 778 (Tex. App.—San Antonio 2008, no pet.)

16

(explaining that evidence relating to child's injuries was relevant to establishing the offense of injury to a child).  The trial court did not abuse its discretion in overruling defense counsel's objection.  Accordingly, we overrule appellant's fourth issue.

We affirm the trial court's judgment.


/s/     Martha Hill Jamison
Justice


Panel consists of Justices Boyce, Jamison, and Donovan.
Publish — TEX. R. APP. P. 47.2(b).