**AFFIRM; and Opinion Filed July 7, 2016.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-15-00158-CR

**FERNANDO MUNOZ, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 194th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. F-1400579-M**

## MEMORANDUM OPINION

Before Justices Bridges, Evans, and O'Neill[1]
Opinion by Justice O'Neill

Appellant Fernando Munoz pleaded not guilty to the offense of aggravated sexual assault. A jury found him guilty as charged and assessed punishment at ninety years' confinement. Appellant raises five issues on appeal, complaining of ineffective assistance of counsel, jury charge error, and insufficiency of the evidence. Because all dispositive issues are well-settled in law, we issue this memorandum opinion. TEX. R. APP. P. 47.2(a), 47.4. We affirm the trial court's judgment.

### I. BACKGROUND

Karen Martinez, the complaining witness, testified that she was asleep in her bed in the early morning hours of October 17, 2010, when she was awakened by a loud crash at the back of

---

[1] The Honorable Michael J. O'Neill, Justice of the Court of Appeals for the Fifth District of Texas—Dallas, Retired, sitting by assignment.

her house.[2] She then heard a door creak and saw the silhouette of a man coming into her bedroom. Her bedroom has a door that exits to the front of the house. She jumped out of bed and ran for the exit door. Appellant grabbed her around the neck, pulling her back from the door. Martinez tried to get away; she struggled with appellant, fell to the floor, and knocked over a bedside table. She testified that appellant was strangling her, she could not breathe, and she thought she was going to die. Appellant eventually threw her on her bed. He bound, gagged, and blindfolded her. Appellant licked her neck and breast. He penetrated her vaginally and anally with his penis, and he forced her mouth onto his penis. After the assault, he stole some of her property and left her house.

After Martinez managed to untie her hands, she ran to a neighbor's house and called the police. Martinez was taken to Parkland Hospital. Dr. Eddie McCord, UT Southwestern Medical School professor and attending physician in obstetrics and gynecology at Parkland Hospital, testified that he performed a rape examination on Martinez. Dr. McCord described the procedure for such an exam and the type of evidence gathered. He described the injuries suffered by Martinez to be quite a few bruises on her forehead, elbow, and knees, an abrasion on one of her forearms, ligature bruising on her wrists, a black eye, a cut on her lip, bruising and lacerations in her vagina, and a laceration between the entrance to her vagina and her anus.

In March 2013, the police arrested appellant and obtained a sample of his DNA. Appellant's sample was profiled by the Southwestern Institute of Forensic Sciences (SWIFS) and compared to stored data of an earlier profile of DNA samples that had been collected by the police on October 17, 2010, during their investigation of the sexual assault of Martinez. In the

---

[2] The pseudonym of "Karen Martinez" was used to designate the complaining witness in the indictment and in all legal proceedings concerning the offense. *See* TEX. CODE CRIM. PROC. ANN. art. 57.02 (West Supp. 2015). We likewise refer to the complaining witness as Karen Martinez throughout this opinion.

opinion of the testifying witness, Amanda Webb, there was a match between the two DNA profiles.

The jury found appellant guilty of aggravated sexual assault as charged in the indictment and sentenced appellant to ninety years' confinement. This appeal followed.

## II. DISCUSSION

Appellant raises five issues on appeal: First, appellant contends his trial counsel failed to provide effective assistance of counsel during the guilt-innocence phase of his trial. In his second issue, appellant complains that the trial court erred by refusing appellant's request for a jury charge on the lesser-included offense of sexual assault. In his third issue, appellant asserts the evidence was legally insufficient to show that the sexual assault was aggravated. In his fourth issue, appellant contends his trial counsel did not provide effective assistance of counsel because she failed to request a limiting instruction regarding evidence of extraneous offenses and she failed to make an effort to prevent appellant from being punished in this proceeding for the extraneous offenses. In his fifth issue, appellant complains that the trial court erred by failing to give the jury a limiting instruction regarding the burden of proof as to evidence of extraneous offenses and bad acts.

### A. Ineffective Assistance Of Counsel – Guilt/Innocence

To prevail on a claim of ineffective assistance of counsel, an appellant must meet the two-pronged test established by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), and adopted by Texas two years later in *Hernandez v. State*, 726 S.W.2d 53 (Tex. Crim. App. 1986). *Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011). Appellant must show that (1) trial counsel's representation fell below an objective standard of reasonableness, based on prevailing professional norms; and (2) there is a reasonable probability that the result of the proceeding would have been different but for trial counsel's deficient

–3–

performance. *Strickland*, 466 U.S. at 688–92; *Villa v. State*, 417 S.W.3d 455, 462–63 (Tex. Crim. App. 2013). Appellant bears the burden of proving his claims by a preponderance of the evidence. *Lopez*, 343 S.W.3d at 142. Failure to make a showing under either prong of the *Strickland* test defeats a claim for ineffective assistance. *Id*. It is not enough merely to show, through the benefit of hindsight, that trial counsel's actions or omissions were questionable. *Id*. at 142–43.

Review of counsel's representation is highly deferential, and we indulge a strong presumption that counsel's conduct fell within a wide range of reasonable representation. *Villa*, 417 S.W.3d at 463; *Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009). In order for an appellate court to find that counsel was ineffective, counsel's alleged deficiency must be affirmatively demonstrated in the record. *Lopez*, 343 S.W.3d at 142; *Brennan v. State*, 334 S.W.3d 64, 71 (Tex. App.—Dallas 2009, no pet.). Appellant must produce record evidence sufficient to overcome the presumption that, under the circumstances, the challenged action was sound trial strategy. *Strickland*, 466 U.S. at 689; *Villa*, 417 S.W.3d at 463.

Appellant filed a motion for new trial; however, the motion did not raise the issue of ineffective assistance of trial counsel. Several weeks later, appellant filed a second motion for new trial and again failed to raise the issue of ineffective assistance of trial counsel. There was no hearing on appellant's motions for new trial, and they were overruled by operation of law. Consequently, there is no record of a hearing at which appellant's trial counsel was afforded the opportunity to explain her actions or trial strategy. When no evidentiary record is developed at a hearing on a motion for new trial, it is extremely difficult to show that trial counsel's performance was deficient. *See Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002). Trial counsel should ordinarily be given an opportunity to explain her actions before being denounced as ineffective. *Rylander v. State*, 101 S.W.3d 107, 111 (Tex. Crim. App. 2003).

–4–

"Generally, a silent record that provides no explanation for counsel's actions will not overcome the strong presumption of reasonable assistance." *Brennan*, 334 S.W.3d at 71. We assume a strategic motive if any can be imagined and find counsel's performance deficient only if the conduct was so outrageous that no competent attorney would have engaged in it. *Andrews v. State*, 159 S.W.3d 98, 101 (Tex. Crim. App. 2005).[3]

Appellant contends that trial counsel's errors and omissions are obvious from the record on appeal, and there can be no reasonable trial strategy to explain these errors and omissions. He identifies the following purported errors and omissions by trial counsel during the guilt-innocence phase of the trial: (1) trial counsel failed to object to inadmissible evidence and the State's improper jury arguments; (2) trial counsel failed to implement appellant's right to confront certain witnesses; (3) trial counsel failed to subject the State's case to meaningful adversarial testing or serve as an advocate; and (4) trial counsel failed to assert the exclusionary rule to be applied to illegally obtained evidence. We address each of these alleged errors or omissions in turn.

### 1. Failure To Object

Appellant contends he received ineffective assistance because his trial counsel failed to object to the State's improper jury arguments, Martinez's victim impact testimony, evidence that appellant possessed tools that could be used to break into a house, and police officer speculation as to why Martinez could not identify appellant from a police lineup. To establish ineffective assistance of counsel based on a failure to object, appellant must demonstrate that the trial court would have committed harmful error in overruling the objection if trial counsel had objected. *See Parks v. State*, 463 S.W.3d 166, 171 (Tex. App.—Houston [14th Dist.] 2015, no pet.).

---

[3] The court of criminal appeals has repeatedly stated that the record on direct appeal will generally not be sufficient to show that counsel's representation was so deficient as to meet the first prong of the *Strickland* test and thus a writ of habeas corpus is the more appropriate vehicle to raise ineffective assistance of counsel claims. *Lopez*, 343 S.W.3d at 143; *Rylander*, 101 S.W.3d at 110 (internal quotations omitted).

With respect to the State's jury arguments, appellant first complains about the State's opening statement, specifically pointing to the prosecutor's statement: "Today is the day that Karen Martinez can stop looking over her shoulder." Appellant contends this statement destroyed any chance the jury would afford him the presumption of innocence. But according to the record, appellant's trial counsel did object to the prosecutor's statement as an improper opening statement, and the trial court overruled her objection. So appellant's actual complaint seems to be that by objecting to the prosecutor's statement, defense counsel drew attention to the prosecutor's statement and caused it to have an even greater effect on the jury. With respect to the State's closing argument, appellant complains generally that the argument was improper because it induced the jury to return a finding of guilt based on passions, emotions, and sympathy. However, appellant does not point to any specific statements made by the prosecutor to which his trial counsel should have objected. After reviewing the record, we cannot say that trial counsel's actions in either objecting or not objecting to allegedly improper jury arguments fell below an objective standard of reasonableness based on prevailing professional norms. *See Villa*, 417 S.W.3d at 463.

Appellant contends he received ineffective assistance because his trial counsel failed to object when Martinez testified how she felt about being in court, what it was like to have a rape kit examination, how the assault motivated her to take measures for her future safety, and whether she had received counseling. Appellant complains that such testimony was victim impact evidence that should not have been presented to the jury during the guilt-innocence phase. "Outside of the context of homicide cases, victim-impact evidence is generally defined as evidence regarding 'the physical or psychological effect of the crime on the victims themselves.'" *Martin v. State*, 176 S.W.3d 887, 903 (Tex. App.—Fort Worth 2005, no pet.) (quoting *Lane v. State*, 822 S.W.2d 35, 41 (Tex. Crim. App. 1991)). Victim impact testimony is

generally irrelevant at the guilt-innocence phase of trial because it does not tend to make more or less probable the existence of any fact of consequence at that stage. *See Longoria v. State*, 148 S.W.3d 657, 659 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd).

The State contends that asking Martinez how she felt about being in court and what it was like to have a rape kit examination did not call for evidence of the effect of the crime on her and thus, did not solicit objectionable testimony. We note that when Martinez testified about her feelings of fear knowing that her assailant had not been arrested, appellant's trial counsel immediately objected to Martinez's testimony as victim impact testimony, and the trial court sustained the objection. Accordingly, we cannot say that defense counsel's failure to object to other victim impact testimony was not part of her trial strategy. Nor can we say that her failure to object fell below the objective standard of reasonableness. *See Villa*, 417 S.W.3d at 463.

Appellant also complains that trial counsel should have objected to evidence that he possessed tools that could be used to break into houses and to Officer Brandi Kramer's testimony suggesting why Martinez could not identify appellant from a police lineup. Appellant argues there was no strategic reason to withhold objections to such testimony. However, even assuming that appellant is correct regarding the admissibility of this evidence, the record is silent as to why counsel did not object. There may have been strategic reasons for counsel to decline to object even to inadmissible evidence. *See DeLeon v. State*, 322 S.W.3d 375, 381 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd). We cannot say on this record that counsel's performance was deficient because she failed to object to evidence that appellant possessed burglary tools and Officer Kramer's testimony regarding the police lineup.

We conclude appellant has not met his burden of establishing that his defense counsel provided ineffective assistance by failing to object to the State's jury arguments, Martinez's victim impact testimony, testimony regarding Martinez's inability to identify appellant in the

–7–

police lineup, and the admissibility of evidence obtained through police search warrants. "Evaluating the attorney's choices made during trial would require us to second-guess [her] strategy through hindsight, an exercise which cannot support a finding of ineffective assistance." *Longoria*, 148 S.W.3d at 659. We further conclude that appellant has not demonstrated that the trial court would have committed harmful error in overruling the objections if trial counsel had objected. *See Parks*, 463 S.W.3d at 171.

### 2. Failure To Confront Witnesses

Appellant complains that his trial counsel failed to fully cross-examine the witnesses who sponsored the DNA evidence against him. He complains that his trial counsel failed to develop evidence regarding what samples were tested for DNA evidence and the qualifications of analysts who conducted the testing. And he complains that his trial counsel should have objected to Amanda Webb's testimony comparing appellant's known DNA standard to DNA profiles identified by other analysts who did not testify at trial.

At trial, the State called Christi Piekos, a serologist at SWIFS, to testify about testing the evidence she received in connection with the Karen Martinez sexual assault. Piekos described the protocol used by the laboratory to identify and track all evidence with respect to each case. She testified that it is her job to test evidence for the presence of bodily fluids, such as blood or seminal fluid, that can be analyzed for DNA. Piekos described each item of evidence received and tested in connection with the Martinez case and stated that her tests revealed the presence of body fluids. Piekos stated she does not test DNA and does not prepare DNA profiles. With respect to the Martinez evidence that tested positive for bodily fluid, she stored the items for potential DNA analysis by the DNA department of SWIFS. Appellant's trial counsel did not cross-examine Piekos. The record contains no explanation for counsel's decision.

Amanda Webb, a forensic biologist at SWIFS, testified that SWIFS performed DNA testing on the items identified by Piekos in the Karen Martinez's sexual assault case. The testing was done by Christie Dunn and Stacy McDonald, neither of whom testified during the guilt/innocence phase of trial. Webb testified that SWIFS developed a DNA profile for the perpetrator in the Martinez case. However, SWIFS did not have a match, did not know the identity of the perpetrator, and labeled the DNA profile as unknown male. In 2013, the Dallas Police Department sent appellant's buccal swab to SWIFS for DNA analysis. Webb performed the DNA testing on appellant's buccal swab. She then compared his DNA profile to a printout from their instruments that showed a match to the DNA profile previously obtained from the evidence tested by Christi Dunn in the Martinez case. Webb testified in detail about each DNA sample tested, the match to appellant's DNA profile, and the statistical probability for such a match.

According to the record, appellant's trial counsel cross-examined Webb about her comparison of appellant's DNA profile to the DNA profile of the unknown male perpetrator in the Martinez case. She questioned who had performed the actual testing on the evidence in the Martinez case and whether Webb merely relied on their report. She questioned whether Webb re-checked the analysis that went into creating the original DNA profile of the unknown male perpetrator. She questioned the number of genetic markers that go into creating a DNA profile and how the DNA from one person can be isolated from a sample containing a mixture of DNA from several people.

The record establishes that in this case Webb performed the crucial analysis determining the DNA match and testified regarding her own conclusions. She was not merely a testifying expert acting as a surrogate to introduce a non-testifying analyst's report. *See Paredes v. State*, 462 S.W.3d 510, 517–18 (Tex. Crim. App. 2015), *cert. denied*, 136 S.Ct. 483 (2015). Given the

silent record, we assume appellant's trial counsel had a strategic motive for the manner in which she cross-examined Webb. *See Andrews*, 159 S.W.3d at 101.

### 3. Failure To Cross Examine Witnesses

Appellant contends he received ineffective assistance of counsel because his trial counsel did not subject the State's case to meaningful adversarial testing or serve as an advocate. Appellant complains that his trial counsel made little effort to cross-examine the State's witnesses. Appellant also lists avenues of questioning that he believes should have been explored at trial by his counsel. Cross-examination is inherently risky. *Ex parte McFarland*, 163 S.W.3d 743, 756 (Tex. Crim. App. 2005). The decision not to cross-examine a witness is most often considered a matter of trial strategy developed as a result of wisdom acquired by experience in the combat of trial. *Id.* "Cross-examination is an art, not a science, and it cannot be adequately judged in hindsight." *Id.* It is entirely reasonable that a defense attorney would limit his cross-examination out of fear of alienating a jury or coming across as too aggressive. *See Navarro v. State*, 154 S.W.3d 795, 799 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd).

The record does not reveal why counsel declined to cross-examine some of the State's witnesses. We may not assume a lack of sound trial strategy on the part of defense counsel merely because we are unable to discern any particular strategic or tactical purpose in counsel's trial presentation. *See Bone*, 77 S.W.3d at 836. Based on the record before us, appellant has not rebutted the strong presumption that his trial counsel's performance was within the range of reasonable professional assistance. *See Lopez*, 343 S.W.3d at 142.

### 4. Failure To Assert Exclusionary Rule

Appellant criticizes his trial counsel for failing to assert the exclusionary rule to exclude all illegally obtained evidence from the search of his residence and his mouth. Appellant suggests that if his trial counsel had filed a motion to suppress the evidence obtained in these

–10–

searches, or if his trial counsel had objected to the admissibility of such evidence at trial, it is possible the State would have had no evidence against him. The record before us does not explain why trial counsel did not file a motion to suppress. We do not know whether trial counsel was aware of other evidence not presented or knew of other factors bearing on the admissibility of the seized burglary tools or appellant's buccal swab that would have made pursuit of a motion fruitless.

Failure to file a suppression motion or to object to the admission of evidence does not necessarily constitute ineffective assistance of counsel. *See Ortiz v. State,* 93 S.W.3d 79, 93 (Tex. Crim. App. 2002); *Cotton v. State,* 480 S.W.3d 754, 757 (Tex. App.—Houston [1st Dist.] 2015, no pet.). To show that counsel's performance was deficient, appellant was obliged to prove the motion would have been granted or the objection would have been sustained. *See Ortiz*, 93 S.W.3d at 93 (stating that a claim of ineffective assistance based on failure to object to the admission of evidence must establish that the evidence was inadmissible); *Jackson v. State*, 973 S.W.2d 954, 957 (Tex. Crim. App. 1998) (holding that to prevail on his claim of ineffective assistance, appellant was obliged to prove that a motion to suppress would have been granted); *Roberson v. State*, 852 S.W.2d 508, 510–11 (Tex. Crim. App. 1993) (holding that without a showing that a pretrial motion had merit and that a ruling on the motion would have changed the outcome of the case, counsel is not ineffective for failing to assert the motion).

Here, search warrants were obtained before either search was conducted. Appellant challenges the warrant obtained to search of his residence, arguing that the affidavit used to secure the search warrant failed to state any facts to support a belief that any of the implements or instruments used in the burglary of habitation and aggravated sexual assault offenses were located at the place to be searched. Appellant also complains that the affidavit failed to sufficiently link appellant with each alleged offense, failed to explain why any of the items

sought could be expected to be kept in the apartment years later, and presented wholly conclusory statements that failed to establish probable cause.

The record does not establish that an effort to suppress evidence by challenging the search warrant was warranted in this case, much less that the effort had a likelihood of success. The affidavit stated that affiant, an experienced police officer participating in the investigation of a sexual assault, had probable cause to believe that implements or instruments of the offenses may be found in appellant's residence, based on a detailed description of three instances in which a perpetrator broke into a house, sexually assaulted a resident in the house, and then stole property from the house. The affidavit provided the complainants' physical descriptions of the perpetrator, stated that appellant's palm print was discovered on the leather couch where one of the complainants was sexually assaulted, stated that one of the complainants recognized appellant from his photograph, and described items possibly related to the sexual assaults that were found in appellant's vehicle in a search incident to his arrest. And the affidavit informed the magistrate that there was probable cause to believe that one man committed the sexual assaults described over the course of several years.

With respect to the search warrant to obtain the buccal swab of appellant's mouth, appellant complains that his trial counsel should have filed a motion to suppress because the affidavit used to secure the search warrant failed to set forth substantial facts establishing probable cause to believe the material to be obtained would constitute evidence that appellant committed the offense described in the affidavit. Specifically, appellant complains the affidavit lacked sufficient detail with respect to the couch where a palm print was found, when or how the palm print was discovered, what it meant to "individualize" a palm print, and the significance of entering the print into AFIS. Appellant further contends the affidavit did not support the reliability of identifying the palm print as belonging to him. Based on the record, sufficient facts

were presented to satisfy the magistrate that probable cause existed to issue the search warrant. *See* TEX. CODE CRIM. PROC. ANN. art. 18.01(b) (West Supp. 2015). Because appellant cannot show a reasonable probability that the motion to suppress would have been granted, his trial counsel's failure to file such a motion was not a deficient performance. *See Jackson*, 973 S.W.2d at 957; *Carroll v. State*, 56 S.W.3d 644, 649 (Tex. App.—Waco 2001, pet. ref'd).

In determining whether trial counsel's assistance was effective, we look at counsel's representation as a whole, and not merely at isolated errors. *Ex parte Kunkle*, 852 S.W.2d 499, 505 (Tex. Crim. App. 1993). The silent record in this case does not suffice to overcome the presumption that, under the circumstances, the challenged actions were sound trial strategy. *See Strickland*, 466 U.S. at 689; *Villa*, 417 S.W.3d at 463. We overrule appellant's first issue.

## B. Sufficiency Of The Evidence

In his third issue, appellant challenges the legal sufficiency of the evidence to support the aggravating element of the offense. He contends Martinez's testimony concerning her fear that her attacker would kill her or cause her serious bodily injury was so disconnected from common, objective expectations normally associated with the defendant's acts or words that the only reasonable conclusion the jury could reach was that the sexual assault was not aggravated.

We review the sufficiency of the evidence under the standard set out in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Acosta v. State*, 429 S.W.3d 621, 624 (Tex. Crim. App. 2014). We examine all the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Acosta*, 429 S.W.3d at 624–25. We must defer to the jury's credibility and weight determinations because the jury is the exclusive judge of the witnesses' credibility and the weight to be given to their testimony. *See Winfrey v. State*, 393 S.W.3d 763, 768 (Tex. Crim. App. 2013).

A person commits sexual assault if the person: (1) intentionally or knowingly, (2) causes the penetration of the anus or sexual organ of another person by any means, without that person's consent. TEX. PENAL CODE ANN. § 22.011(a)(1)(A) (West 2011). The offense is elevated to aggravated sexual assault if the offender by acts or words places the victim in fear that death or serious bodily injury will be imminently inflicted on any person, or by acts or words occurring in the presence of the victim threatens to cause the death or serious bodily injury of any person. *Id*. § 22.021(a)(2)(A)(ii), (iii) (West Supp. 2015). Here, appellant does not challenge the sufficiency of the evidence regarding the elements of the sexual assault. Instead, he limits his challenge to whether there was sufficient evidence that he placed Martinez in fear that death or serious bodily injury would be imminently inflicted on her.

The indictment alleged that appellant intentionally and knowingly caused contact of Martinez's sexual organ by appellant's sexual organ, without the consent of Martinez, and by acts and words appellant "did place the complainant in fear that death and serious bodily injury would be imminently inflicted on [complainant], and further, said defendant, by acts and words occurring in the presence of the complainant, did threaten to cause the death and serious bodily injury of [complainant]." Thus, the indictment alleges that appellant's sexual assault of Martinez was aggravated in two ways—placing her in fear of, and threatening to cause, death or serious bodily injury. The jury could convict appellant of aggravated sexual assault if it found the evidence proved either of the alleged aggravating factors.

In determining whether the State established Martinez was in fear of imminent infliction of death or serious bodily injury, the jury was required to assess whether Martinez was fearful, whether appellant's conduct caused that fear, and whether Martinez's fear was a reasonable result of appellant's conduct. *Grunsfeld v. State*, 813 S.W.2d 158, 162 (Tex. App.—Dallas 1991), *aff'd*, 843 S.W.2d 521 (Tex. Crim. App. 1992); *Whitten v. State*, Nos. 05-08-01141-CR &

–14–

05-08-01142-CR, 2009 WL 2246128, at *7 (Tex. App.—Dallas July 29, 2009, no pet.) (not designated for publication). The first element, whether Martinez was in fact fearful, is usually established by the complainant's testimony. *Douglas v. State*, 740 S.W.2d 890, 891 (Tex. App.—El Paso 1987, no writ); *Lourenco v. State*, Nos. 05-13-01092-CR & 05-13-01114-CR, 2015 WL 356429, at *6 (Tex. App.—Dallas Jan. 28, 2015, no pet.) (not designated for publication). In examining the second and third elements, the jury may consider the defendant's objective conduct, i.e., acts, words, or deeds, and infer from the totality of the circumstances whether his overall conduct was the producing cause of Martinez's fear and whether the subjective state of fear was reasonable in light of such conduct. *Brown v. State*, 960 S.W.2d 265, 268 (Tex. App.—Corpus Christi 1997, no pet.); *Kemp v. State*, 744 S.W.2d 243, 245 (Tex. App.—Houston [14th Dist.] 1987, writ ref'd).

In determining whether the State established that appellant threatened to cause the death or serious bodily injury of Martinez, it is not necessary to show the threat of serious bodily injury or death was communicated verbally. *Mata v. State*, 952 S.W.2d 30, 32 (Tex. App.—San Antonio 1997, no writ); *Kemp*, 744 S.W.2d at 245. Nor is it necessary to show that appellant could have inflicted serious bodily injury. *See Grunsfeld*, 813 S.W.2d at 162. Where the objective facts of the assault would naturally cause Martinez to fear for her life or serious bodily injury, it is reasonable to assume the complainant had the requisite level of fear in the absence of some specific evidence to the contrary. *See Brown*, 960 S.W.2d at 268.

The evidence in this case shows that appellant broke into Martinez's home in the early hours of the morning while Martinez was sleeping. It also shows that appellant entered her bedroom. When Martinez ran for the door, appellant grabbed her by the neck and pulled her back. Martinez struggled with appellant and was knocked to the floor. She testified that appellant was strangling her, she could not breathe, and she was terrified and thought she was

going to die. Appellant threw her on her bed, tied her up, gagged her, and blindfolded her. Appellant ripped off her clothes and sexually assaulted her. Martinez testified that she begged appellant not to hurt her and not to kill her. Martinez also testified that she feared for her life throughout the assault and thought death or serious bodily injury would be imminently inflicted on her. Appellant's actions were sufficient to place a reasonable person in fear of death or serious bodily harm. We therefore conclude the force and restraint imposed on Martinez by appellant and the totality of the circumstances justified Martinez's subjective apprehension of death or serious bodily injury and satisfied section 22.021(a)(2)(A). Viewing the evidence in the light most favorable to the verdict, we believe a reasonable jury could have found appellant's actions were sufficient to support a conclusion that he committed aggravated sexual assault. Thus, the evidence was legally sufficient to support appellant's conviction for aggravated sexual assault. Appellant's third issue is overruled.

## C. Jury Charge – Lesser-Included Offense

In his second issue, appellant argues the trial court erred in denying a request for a jury instruction on the lesser included offense of sexual assault. We use a two-step analysis to determine whether a lesser included instruction requested by a defendant must be given. *Sweed v. State*, 351 S.W.3d 63, 67 (Tex. Crim. App. 2011). We first ask whether the lesser included offense is in fact included within the proof necessary to establish the offense charged, comparing statutory elements and "descriptive averments" in the indictment for the greater offense with the statutory elements of the lesser offense. *Id*. at 68. Comparing the elements of the offense of aggravated sexual assault to the elements of the offense of sexual assault, it is clear that sexual assault is, by definition, a lesser included offense of aggravated sexual assault. *See* TEX. PENAL CODE ANN. § 22.021 (aggravated sexual assault); TEX. PENAL CODE ANN. § 22.011 (sexual assault); *see also Perryman v. State*, 798 S.W.2d 326, 332 (Tex. App.—Dallas 1990, no writ)

("By definition, sexual assault is a lesser included offense of aggravated sexual assault."). The first step of our analysis is satisfied.

The second step requires us to determine whether there is evidence in the record that would permit a rational jury to determine that—if the accused is guilty—he is guilty only of the lesser included offense. *Sweed*, 351 S.W.3d at 71; *Guzman v. State*, 188 S.W.3d 185, 188–89 (Tex. Crim. App. 2006). "Anything more than a scintilla of evidence is sufficient to entitle a defendant to a lesser charge." *Bignall v. State*, 887 S.W.2d 21, 23 (Tex. Crim. App. 1994). However, "there must be some evidence directly germane to a lesser-included offense for the factfinder to consider before an instruction on a lesser-included offense is warranted." *Skinner v. State*, 956 S.W.2d 532, 543 (Tex. Crim. App. 1997). As stated above, there was sufficient evidence for the jury to find the element of aggravation. Appellant presented no evidence that refuted or negated the evidence establishing the greater offense of aggravated sexual assault, nor was there any evidence that raised only the lesser offense of sexual assault. Therefore, we conclude that the second step was not satisfied and appellant was not entitled to a charge on the lesser included offense of sexual assault. We overrule appellant's second issue.

## D. Failure To Instruct – Extraneous Offenses

In his fifth issue, appellant contends the trial court committed harmful error in the punishment phase of trial by failing to sua sponte instruct the jury that it could not consider evidence of extraneous offense and bad acts unless it first determined that the commission of the extraneous offenses and bad acts was proven beyond a reasonable doubt. In reviewing alleged jury charge error, we first determine whether error exists. *Cortez v. State*, 469 S.W.3d 593, 598 (Tex. Crim. App. 2015); *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012).

If evidence of extraneous offenses or bad acts is before the jury, article 37.07, section 3(a) of the Texas Code of Criminal Procedure requires that jurors "be instructed not to consider

–17–

such extraneous offenses or bad acts in assessing the defendant's punishment unless they find the defendant culpable for such offenses or acts under the statutorily prescribed reasonable-doubt standard." *Allen v. State*, 47 S.W.3d 47, 50 (Tex. App.—Fort Worth 2001, pet. ref'd); *see* TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3(a)(1) (West Supp. 2015). The trial court is required to give the instruction to the jury as the law of the case. *Huizar v. State*, 12 S.W.3d 479, 484 (Tex. Crim. App. 2000). Therefore, appellant's failure to object to the jury charge at trial does not waive error; rather, the court's failure to give the instruction is subject to the egregious harm analysis. *See id.*; *see also Martinez v. State*, 313 S.W.3d 358, 365 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd).

We conclude error exists in the jury charge because the trial court did not include the reasonable doubt instruction. *See Huizar*, 12 S.W.3d at 484. The error, however, is not constitutional error; it is purely charge error. *See id.* at 481–82, 484. Because appellant concedes he did not object to the charge, we examine the record for evidence of egregious harm. *See Barrios v. State*, 283 S.W.3d 348, 350 (Tex. Crim. App. 2009); *see also Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985). "Errors that result in egregious harm are those that affect 'the very basis of the case,' 'deprive the defendant of a valuable right,' or 'vitally affect a defensive theory.'" *Ngo v. State*, 175 S.W.3d 738, 750 (Tex. Crim. App. 2005) (quoting *Hutch v. State*, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996), overruled on other grounds by *Gelinas v. State*, 398 S.W.3d 703 (Tex. Crim. App. 2013)). We examine the entire record to determine whether the error was so egregious and created such harm that appellant did not receive a fair and impartial trial. *See Hutch*, 922 S.W.2d at 171; *Almanza*, 686 S.W.2d at 171; *see also* TEX. CODE CRIM. PROC. ANN. art 36.19. (West 2006). We assess harm in light of the entire jury charge, the state of the evidence, including contested issues, the arguments of counsel, and any other relevant information revealed by the record as a whole. *See Olivas v. State*, 202

S.W.3d 137, 144 (Tex. Crim. App. 2006); *Martinez*, 313 S.W.3d at 367. We also consider whether evidence of the extraneous offense was clear, strong, direct, and unimpeached. *See Martinez*, 313 S.W.3d at 367.

During the punishment phase, the State introduced evidence of similar extraneous sexual assaults of "Taylor King" and "Ann Martinez," as well as two pending offenses involving the burglary of a habitation and an aggravated assault with a deadly weapon. Through evidence of the aggravated sexual assault of "Taylor King," appellant was identified as the perpetrator by his DNA and palm print left at the crime scene. Through evidence of the aggravated sexual assault of "Ann Martinez," appellant was identified as the perpetrator by his DNA left at the crime scene. The jury heard testimony from Amanda Webb, DNA analyst at SWIFS, who compared appellant's DNA profile to the profiles prepared from DNA evidence at the Taylor King and Ann Martinez crime scenes. Webb explained that SWIFS does a statistical analysis of the probability of selecting at random an individual that would match appellant's DNA profile for each item tested for DNA evidence. She informed the jury of the statistical improbability that another man existed with the same DNA profile as appellant. Given the convincing nature of the DNA evidence, it is likely that the jury was satisfied beyond a reasonable doubt that the extraneous bad acts and offenses were attributable to the appellant. And once the jury was satisfied beyond a reasonable doubt that such offenses were attributable to appellant, the jury could use the extraneous offense or bad acts evidence however it chose in assessing punishment.

With respect to the evidence of an extraneous burglary, Officer Sanchez testified that she assisted in the investigation of a home burglary case. The thief stole a tablet that contained a tracking device so police were able to follow the tracking signal emanating from appellant's vehicle. When appellant stopped his vehicle, the police apprehended him and conducted an inventory search of the vehicle. The search revealed the stolen tablet, many watches, jewelry

boxes containing jewelry, and a fanny pack containing a crowbar, flashlight, baton, knife, gloves, and a hat. Appellant was arrested and as part of the booking procedure, his fingerprints were put into the law enforcement system.

The State also introduced evidence of a pending extraneous offense of aggravated assault with a deadly weapon. Joyce Bridgewater, appellant's next door neighbor, testified that she personally witnessed appellant chasing one of their neighbors with a machete. Travis Wallace, an officer with the Lewisville Police Department, testified that he responded to the call and arrested appellant for aggravated assault.

The State argued, in closing, that appellant was a violent person and deserved to be imprisoned for life. Defense counsel asked the jury to assess a punishment in the mid-range between five and ninety-nine years. The jury assessed punishment at confinement for ninety years which is below the maximum punishment available, despite the State's request for the maximum. After a review of the entire record, we cannot say that the omission of the reasonable doubt instruction from the jury charge in the punishment phase, although erroneous, affected the very basis of appellant's case, deprived him of a valuable right, or denied him a fair and impartial trial. *See Almanza*, 686 S.W.2d at 174; *Martinez*, 313 S.W.3d at 367. Based upon evidence presented, the jury could have assessed the same punishment even if appellant's extraneous offenses were disregarded. We conclude that appellant was not denied a fair and impartial trial and was not egregiously harmed. We overrule appellant's fifth issue.

**E. Ineffective Assistance of Counsel – Punishment**

In his fourth issue on appeal, appellant contends that his trial counsel was ineffective because she failed to request the limiting instruction discussed above and she failed to make any effort to prevent appellant from being punished in this proceeding for extraneous crimes. As discussed above, the trial court erred by failing to give the reasonable-doubt instruction. *See*

*Huizar*, 12 S.W.3d at 484.  Accordingly, trial counsel's performance in failing to request this instruction was deficient and appellant has satisfied the first prong of *Strickland*.  *See Allen*, 47 S.W.3d at 54.

For the reasons discussed in the previous section, we concluded that the trial court's erroneous failure to instruct the jury on the burden of proof concerning extraneous offenses and bad acts at punishment did not constitute egregious harm.  Given the totality of the evidence and the record as a whole, the jury's sentence of ninety years was supported by the record even in the absence of the evidence of extraneous offenses and bad acts.  Appellant therefore fails to satisfy the second prong of *Strickland*—that the result would have been different had the instruction been requested.  Failure to make the required showing under either prong of *Strickland* defeats an ineffectiveness claim.  *See Lopez*, 343 S.W.3d at 142.  We cannot conclude that appellant's punishment resulted from the ineffective assistance of his trial counsel.  We overrule appellant's fourth issue.

### III.  CONCLUSION

Having overruled all of appellant's issues, we affirm the trial court's judgment.

/Michael J. O'Neill/
MICHAEL J. O'NEILL
JUSTICE, ASSIGNED

Do Not Publish
TEX. R. APP. P. 47

150158F.U05

–21–



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

FERNANDO MUNOZ, Appellant

No. 05-15-00158-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 194th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. F-1400579-M.
Opinion delivered by Justice O'Neill.
Justices Bridges and Evans participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 7th day of July, 2016.