**Affirmed and Memorandum Opinion filed January 21, 2021.**



In The

# Fourteenth Court of Appeals

_____

## NO. 14-18-00152-CR

_____

**DANIEL TRAVIS DURHAM, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 185th District Court
Harris County, Texas
Trial Court Cause No. 1433944**

## MEMORANDUM OPINION

Appellant Daniel Travis Durham appeals his conviction for murder. After the jury found appellant guilty, the jury sentenced appellant to fifty years' confinement. In three issues on appeal, appellant challenges his conviction. We affirm the trial court's judgment.

## I. BACKGROUND

At approximately 1:00 a.m., on July 4, 2014, in a West Houston residential neighborhood, the decedent and his wife noticed the electricity in their home went off. Within a minute, their generator restored power, at which time they observed motion sensor lights in the backyard of their home had been activated. Believing there was an intruder, the decedent instructed his wife to stay in the house, then put a gun in his pajama pocket and went out the back door.

The decedent's wife went to the bedroom window, pulled back the blind, and saw her husband with appellant; she heard her husband tell appellant to get off their property. She saw appellant take a few steps in the driveway, but then saw appellant charge at her husband, pushing him into the garage. Because she was scared, she locked the bedroom door, went into the closet, and called 911 to request police assistance. While walking to the closet, she heard two gunshots, approximately a minute apart.

Harris County sheriff's deputies arrived at the home and discovered decedent dead in his garage from gunshot wounds.

A description of appellant was broadcast over the deputies' radio. While in route to the scene, Deputy Robert Merrow observed appellant with blood on his clothes, arms, knees, and legs, walking a few blocks from the decedent's home.

Deputy Merrow approached appellant and advised him that the sheriff's office had been dispatched in reference to a weapons disturbance in the area. When Deputy Merrow asked what appellant was doing in the general area, appellant said he was taking a walk and visiting his mother. Deputy Merrow asked appellant if he was injured, and he responded that he was not. Appellant had a cellular telephone in his

hand and identification in his pocket. Appellant did not have a weapon in his possession.

Because Deputy Merrow believed appellant and the clothes appellant was wearing matched the description being broadcast of the suspect in the weapons disturbance call, appellant was detained in the back seat of Deputy Merrow's patrol car. Deputy Merrow placed bags around appellant's hands to preserve evidence, placed him in handcuffs, and returned him to the decedent's house.

Sergeant Dennis Wolfford, a homicide detective, arrived at decedent's house at approximately 3:10 a.m. Appellant was in the back seat of Deputy Merrow's patrol car. The murder weapon had not been located.

After removing appellant from the patrol car, Sergeant Wolfford told appellant that children were going to be waking up soon and he was concerned that one of them would find the gun. Without reading appellant his *Miranda* rights,[1] Sergeant Wolfford asked appellant one question—where the gun was located. Appellant responded with the gun's location—it was in a trash can in front of his mother's house. Sergeant Wolfford did not record appellant's statement at the scene.

A crime scene investigator recovered the gun from the trash can in front of appellant's mother's house, which was less than half a mile from the decedent's home. Deputy Merrow transported appellant to homicide unit headquarters.

After starting a video recorder, Deputy Mario Quintanilla read appellant his *Miranda* and article 38.22 rights; appellant can be heard and seen waiving those rights. Sergeant Mark Reynolds and Deputy Quintanilla questioned appellant. The

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966) (expanded and codified in Tex. Code Crim. P. art. 38.22).

interview took place over a few hours, during which appellant confessed to killing the decedent, providing details of the altercation preceding the homicide.

Appellant was charged with murder. After being booked into the Harris County Jail, records indicate that appellant was seen for a routine intake health screening on July 4, 2014. Appellant was observed to be alert and responsive and did not appear to be withdrawing from or under the influence of drugs or alcohol. Because appellant reported a history of mental illness (schizophrenia and depression), he was referred for psychiatric assessment. On that same day, the Mental Health and Mental Retardation Authority ("MHMRA") conducted an initial psychiatric assessment, diagnosing appellant with Schizoaffective Disorder and Polysubstance Dependence; he was prescribed medication to manage his psychiatric symptoms. The examiner observed appellant to be stable and not in need of specialized mental health housing. On July 7, 2014, after being reported to have "behave(d) oddly," appellant underwent another initial psychiatric assessment. The assessing psychiatrist added Cocaine Abuse and Alcohol Abuse to appellant's diagnostic profile, changed his medication regime, and referred him to housing in the mental health unit of the jail for stabilization. Appellant refused cognitive behavior therapy, was discharged from the mental health unit, and moved to administrative separate housing where he was monitored by MHMRA staff.

In February 2015, the trial court ordered an assessment of appellant's competency to stand trial. Upon examination, a psychologist with MHMRA determined appellant to be incompetent to stand trial. The trial court signed an order of commitment and transferred appellant to a state mental hospital for psychiatric treatment and competency restoration.

After a period of observation, in August 2015, a psychologist with Rusk State Hospital evaluated appellant's competency and determined him to be competent to

4

stand trial.  Thereafter, the trial court ordered an evaluation of appellant's sanity; the psychologist opined that appellant was sane at the time of the alleged offense.

On February 7, 2018, appellant filed a motion to suppress his statements. After conducting a suppression hearing on February 9, at which Sergeant Wolfford testified as to appellant's statement at the scene, and a video recording of appellant's interrogation at the homicide unit was admitted into evidence, the trial court denied appellant's motion to suppress both the oral statement made at the scene, and the subsequent videotaped statement.  In regard to the motion to suppress the oral statement made at the scene, the trial court found that the circumstances fell within the public safety exception to *Miranda*.  On the motion to suppress the recorded statement, the trial court found that, based on the totality of the facts, appellant's statement was freely and voluntarily given.  Additionally, the trial court signed an order for restoration of competency, finding appellant mentally competent to stand trial.

A jury trial commenced and, after approximately a week of testimony, the jury found appellant guilty and sentenced appellant to fifty years' imprisonment.  On February 20, 2018, the trial court signed its Judgment and Conviction in accordance with the jury's verdict.

This appeal timely followed.  On August 23, 2018, we entered an abatement order directing the trial court to reduce to writing its findings of fact and conclusions of law on the voluntariness of appellant's statement.  On December 17, 2018, the trial court entered its Findings of Fact and Conclusions of Law and the appeal was reinstated.

## II. ANALYSIS

Appellant presents the following three issues on appeal:

1) Whether the trial court erred in denying the motion to suppress his statement made at the scene that led to the recovery of the weapon because it was taken in violation of his Fifth Amendment privilege against self-incrimination and Sixth Amendment right to assistance of counsel under the U.S. Constitution as recognized by *Miranda* and article 38.22 of the Texas Code of Criminal Procedure.

2) Whether the trial court erred in denying the motion to suppress his recorded custodial statement to police due to his mental defect at the time of the statement.

3) Whether the trial court erred in denying appellant's request to allow Dr. Sherry, appellant's psychiatric expert, to remain in the courtroom after the witness sequestration rule had been invoked.

### A. MOTION TO SUPPRESS

#### 1. STANDARD OF REVIEW

When reviewing a trial court's ruling on a motion to suppress, we apply an abuse of discretion standard: we overturn the trial court's ruling only if it is outside the zone of reasonable disagreement. *State v. Cortez*, 543 S.W.3d 198, 203 (Tex. Crim. App. 2018); *Martinez v. State*, 348 S.W.3d 919, 922 (Tex. Crim. App. 2011). We use a bifurcated standard of review. *Ramirez-Tamayo v. State*, 537 S.W.3d 29, 35 (Tex. Crim. App. 2017). An appellate court gives almost total deference to the trial court's determination of historical facts but conducts a de novo review of the trial court's application of the law to those facts. *See State v. Kerwick*, 393 S.W.3d 270, 273 (Tex. Crim. App. 2013); *Wilson v. State*, 311 S.W.3d 452, 458 (Tex. Crim. App. 2010). "As the sole trier of fact during a suppression hearing, a trial court may believe or disbelieve all or any part of a witness's testimony." *See id.* An appellate court examines the evidence in the light most favorable to the trial court's ruling.

*See id.* A trial court will abuse its discretion only if it refuses to suppress evidence that is obtained in violation of the law and that is inadmissible under Texas Code of Criminal Procedure article 38.23. *See id.*

When, as here, the trial court has made express findings of fact, an appellate court views the evidence in the light most favorable to those findings and determines whether the evidence supports the fact findings. *See State v. Rodriguez*, 521 S.W.3d 1, 8 (Tex. Crim. App. 2017); *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010). "We will sustain the trial court's ruling if that ruling is 'reasonably supported by the record and is correct on any theory of law applicable to the case.'" *Valtierra*, 310 S.W.3d at 447–48.

## 2. AT-THE-SCENE STATEMENT

In his first issue, appellant contends that the trial court erred in denying the motion to suppress his statement made at the scene which led to the recovery of the gun because the interrogation was in violation of his Fifth Amendment privilege against self-incrimination and Sixth Amendment right to assistance of counsel[2] under the U.S. Constitution, as recognized by *Miranda* and article 38.22 of the Texas Code of Criminal Procedure.

The State concedes that appellant was in custody and subject to interrogation when Sergeant Wolfford asked appellant about the location of the gun. The State, however, argues that the public safety exception applies and did not bar the use of the statements at appellant's trial.

---

[2] The Sixth Amendment right to counsel generally does not attach until adversary judicial process has been initiated. *Montejo v. Louisiana*, 556 U.S. 778, 786 (2009). Here, there is no indication that this had occurred while appellant was still at the scene. Additionally, there is no evidence that appellant invoked his right to counsel at the scene. Finally, appellant does not brief how the Sixth Amendment was implicated under these circumstances.

### a. TRIAL COURT FINDINGS OF FACT AND CONCLUSIONS OF LAW

After conducting a suppression hearing at which Sergeant Wolfford testified, the trial court made several findings of fact, including:

- This Court finds that Sergeant Wolfford, a supervisor with the homicide unit of the Harris County Sheriff's Office, who testified in the Motion to Suppress hearing, was a credible and reliable witness.

- This Court finds that on July 4, 2014, Wolfford was assigned to assist in the investigation of the murder of [decedent] . . . on the same day.

- This Court finds that [the decedent's] death appeared to Wolfford to be the result of gunshot wounds.

- This Court finds that on July 4, 2014, Defendant was at the scene of the murder with what appeared to Wolfford to be blood on [Defendant's] shorts.

- This Court finds that the Defendant was handcuffed, placed in the rear seat of a marked police vehicle, and detained at the scene in custody.

- This Court finds that when the defendant, Daniel Durham, was detained, he was not in possession of a firearm.

- This Court finds that at the time Wolfford spoke to the Defendant, Wolfford feared that the firearm used to shoot [the decedent] had been discarded somewhere in the surrounding neighborhood, where it might be discovered by a child. Wolfford therefore reasonably believed that there was a danger to public safety.

- This Court finds that Wolfford did not read the Defendant his *Miranda* warnings at the time of Defendant's statement concerning the location of the weapon.

- This Court finds that the Defendant told Wolfford the gun would be located in a trash can in front of Defendant's mother's house, where the gun was then found.

Additionally, the trial court made the following conclusion of law: "Defendant's at-the-scene statements to Wolfford were admissible because a weapon in a residential area posed a threat to public safety requiring expediency on the part of Wolfford."

### b.  MIRANDA AND ARTICLE 38.22

*Miranda* and Article 38.22 of the Texas Code of Criminal Procedure require a defendant be given specific warnings for statements that are the result of custodial interrogation in order to be admissible.  *See Miranda v. Arizona*, 384 U.S. 436 (1966); Tex. Code Crim. Proc. art. 38.22.   The *Miranda* warnings are "'not themselves rights protected by the Constitution but [are] instead measures to insure that the [suspect's] right against compulsory self-incrimination [is] protected.'" *New York v. Quarles*, 467 U.S. 649, 654 (1984) (quoting *Michigan v. Tucker*, 417 U.S. 433, 444 (1974)).  "The purpose of the *Miranda* warnings instead is to dissipate the compulsion inherent in custodial interrogation and, in doing so, guard against abridgement of the suspect's Fifth Amendment rights."  *McCambridge v. State*, 712 S.W.2d 499, 506 (Tex. Crim. App. 1986) (en banc).

Article 38.22 of the Texas Code of Criminal Procedure governs the admissibility of statements made by a defendant during custodial interrogation in a criminal proceeding.  Tex. Code Crim. Proc. art. 38.22.  Section 3 provides that an oral statement is admissible against a defendant in a criminal proceeding if, among other things: (1) the statement was electronically recorded; (2) the defendant was given the warnings set out in Section 2(a) before the statement was made and it is included on the recording; and (3) the defendant "knowingly, intelligently, and voluntarily" waived the rights set out in the warnings.  *Id*. at § 3  "The warnings provided in Section 2(a) are virtually identical to the *Miranda* warnings, with one exception—the warning that an accused 'has the right to terminate the interview at any time' as set out in Section 2(a)(5) is not required by *Miranda*."  *Herrera v. State*, 241 S.W.3d 520, 526 (Tex. Crim. App. 2007) (citations omitted); *see Wilkerson v. State*, 173 S.W.3d 521, 527 n. 14 (Tex. Crim. App. 2005) (observing that Article 38.22 "requires a slightly more elaborate set of warnings than *Miranda* [.]").  "As

9

with the *Miranda* warnings, the warnings in Section 2(a) of Article 38.22 are required only when there is custodial interrogation." *Herrera*, 241 S.W.3d at 526.

Absent an exception, a confession is illegal and must be suppressed if it is obtained pursuant to a "custodial interrogation" without the benefit of *Miranda* warnings. *See, e.g.*, *McCambridge v. State*, 712 S.W.2d 499, 504–05 (Tex. Crim. App. 1986); *DeLeon v. State*, 758 S.W.2d 621, 624–25 (Tex. App.—Houston [14th Dist.] 1988, no pet.)

The United States Supreme Court created a public safety exception to *Miranda. See Quarles*, 467 U.S. at 655–57; *see also Hutchison v. State*, 424 S.W.3d 164, 180 (Tex. App.—Texarkana 2014, no pet.). The "public safety" exception exempts from *Miranda* those situations in which an officer has reason to believe that immediate and summary questioning is necessary to protect members of the public from serious harm. *Quarles*, 467 U.S. at 656. The Supreme Court concluded that "the need for answers to questions in a situation posing a threat to the public safety outweighs the need for the prophylactic rule protecting the Fifth Amendment's privilege against self-incrimination." *Id.* at 657; *see Russell v. State*, 215 S.W.3d 531, 534 (Tex. App.—Waco 2007, pet. ref'd).

### c. APPLICATION

It is undisputed that appellant was in custody at the time Sergeant Wolfford asked him where gun was located. Because Sergeant Wolfford neither read appellant his *Miranda* rights nor complied with article 38.22 regarding appellant's statements at the scene, the interrogation must fall within an exception in order for appellant's at-the-scene statements to be admissible.

Appellant argues that Sergeant Wolfford's interrogation regarding the location of the gun was solely to elicit testimonial evidence and did not fall under

the public safety exception to the Miranda warnings. Thus, appellant contends, it should have been suppressed. We disagree.

At the suppression hearing, Sergeant Wolfford testified that he wanted one specific question answered: the location of the gun. Sergeant Wolfford stated that he did not read appellant his *Miranda* warnings "[b]ecause of the exigency of the situation, that I believed that there was a firearm that was out in that neighborhood. The day was July 4th. It will be daylight soon. And I was concerned that a child would find that gun in the morning in the front yard of somebody's — somebody's residence." Additionally, through Sergeant Wolfford's testimony, several photographs (*e.g.*, an aerial map of the decedent's neighborhood, the body of the decedent at the scene with gunshot wounds, a live round of ammunition and a spent shell casing at the scene, blood on the appellant's clothes and body, the trash can in which the gun was located, and blood on the slide of the recovered gun) were admitted into evidence.

We give almost total deference to a trial court's determination of historical facts, especially if those determinations turn on witness credibility or demeanor, as here. *See Neal v. State*, 256 S.W.3d 264, 281 (Tex. Crim. App. 2008). Given the evidence before the trial court at the suppression hearing, we conclude the trial court did not abuse its discretion in denying appellant's motion to suppress and admitting appellant's statement at the scene because Sergeant Wolfford's single inquiry concerning the location of the gun was reasonable and clearly fell within the public safety exception to *Miranda* and article 38.22 of the Texas Code of Criminal Procedure. *Quarles*, 467 U.S. at 655–57; *see DeLeon*, 758 S.W.2d at 625.

### d.     HARMLESS ERROR ANALYSIS

Appellant asserts that "the erroneous denial of a motion to suppress a statement taken in violation of *Miranda* is constitutional error subject to review

11

under the standard set forth in Rule 42.2(a) of the Texas Rules of Appellate Procedure."

Assuming, arguendo, that the trial court erred in denying the motion to suppress with regard to appellant's statement at the scene about the location of the gun, contrary to appellant's contentions, the record does not establish that appellant was harmed. *See* Tex. R. App. P. 44.2(a)[3] (setting forth standard for determining constitutional error).

As an initial matter, appellant's argument that suppression of appellant's statement in regard to the location of the gun would have led to suppression of the gun itself is flawed. Contrary to appellant's assertion, violations of *Miranda* do not call for the exclusion of derivative physical evidence found as a result of a defendant's unwarned statement. *United States v. Patane*, 542 U.S. 630, 636–38 (2004) (plurality). As applied here, even if appellant's statement regarding the location of the gun to Sergeant Wolfford was improper, the location of the gun would not have been suppressed. *See id.* at 643–44 (gun found as a result of a defendant's unwarned statement need not be suppressed); *Quarles*, 467 U.S. at 667–74 (O'Connor, J., concurring) (noting that even if the statement of the defendant had been suppressed the gun itself need not be excluded from evidence).

Moreover, the evidence connecting the appellant to the gun made the introduction of appellant's statement harmless. Decedent's wife identified appellant as the person who had been struggling with her husband. The decedent was killed with his own gun; the decedent's gun was found in the trashcan in front of the appellant's mother's house. The decedent's wife observed appellant lunge toward

---

[3] "If the appellate record in a criminal case reveals constitutional error that is subject to harmless error review, the court of appeals must reverse a judgment of conviction or punishment unless the court determines beyond a reasonable doubt that the error did not contributed to the conviction or punishment." Tex. R. App. P. 42.2(a).

her husband moments before hearing the gunshots that killed her husband. Appellant was in the area of the shooting after the murder. Appellant was observed with blood on his clothes. Finally, in addition to the identification of appellant by decedent's wife, and the compelling circumstantial evidence, the subsequent video recorded admission by appellant that he shot and killed the decedent renders harmless appellant's statement at the scene that he had placed the gun in the trashcan. *See, e.g., Miller v. State*, No. 04-14-00041-CR, 2015 WL 3775097, *2 (Tex. App.—San Antonio Dec. 16, 2015, pet. ref'd) (mem. op.) (not designated for publication) ("Moreover, even if we held the trial court erred in denying the motion to suppress with regard to Miller's [custodial] statements about the location of the knife, the record does not establish how Miller was harmed by the admission of these statements given that Miller's [non-custodial] statement that he stabbed his father was admissible.").

For the foregoing reasons, we hold that the trial court did not err in admitting appellant's statement at the scene that identified the location of the gun.

Appellant's first issue is overruled.

### 3. RECORDED STATEMENT

Appellant contends in his second issue that the trial court erred in denying the motion to suppress his recorded custodial statement to police due to his mental defect at the time of the statement. Appellant concedes that his waiver was not "involuntary due to coercive police conduct."

The State argues that appellant's concession that his waiver was not coerced forecloses appellant's federal claim under *Miranda*.[4] As to appellant's statutory

---

[4] Due process claims and *Miranda* claims of involuntariness involve an objective assessment of police behavior. *Oursbourn v. State*, 259 S.W.3d 159, 171 (Tex. Crim. App. 2008); *Umana v. State*, 447 S.W.3d 346, 350 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd).

13

claim under article 38.22 of the Texas Code of Criminal Procedure, the State contends that the totality of the circumstances demonstrate that appellant knowingly, intelligently, and voluntarily waived his rights. Thus, the State asserts that denial of suppression and inclusion of a jury instruction was the proper remedy.

### a. TRIAL COURT FINDINGS OF FACT AND CONCLUSIONS OF LAW

For purposes of the suppression hearing only, appellant's recorded confession was admitted without objection. Thereafter, the trial court made several findings of fact, including:

- This Court finds that Sergeant Mark Reynolds, a more than thirty-four-year veteran of the Harris County Sheriff's Office, was a credible and reliable witness.

- This Court finds that Deputy Mario Quintanilla of the Harris County Sheriff's Office was a credible and reliable witness.

- This Court finds that on July 4, 2014, Reynolds and Quintanilla conducted an interview of the Defendant in an interview room at the homicide unit office.

- This Court finds that the interview was recorded in its entirety.

- This Court finds that *Miranda and Tex. Code Crim. Pro. Art. 38.22* (sic) warnings were read to Defendant by Quintanilla.

- This Court finds that Reynolds was present in the room while Quintanilla read the Defendant his *Miranda and Tex. Code Crim. Pro. Art. 38.22* (sic) warnings.

- This Court finds that the Defendant was not interrogated by police or their agents regarding the offense prior to the reading of his *Miranda and Tex. Code Crim. Pro. Art. 38.22* (sic) warnings.

- This Court finds that the Defendant vocally acknowledged that he understood the *Miranda and Tex. Code Crim. Pro. Art. 38.22* (sic).

- This Court finds that the Defendant physically acknowledged that he understood the *Miranda and Tex. Code Crim. Pro. Art. 38.22* (sic) warnings by affirmatively nodding his head.

- This Court finds that the Defendant was fully advised of his rights pursuant to *Miranda and Tex. Code Crim. Pro. Art. 38.22* (sic).

- This Court finds that the Defendant was not promised anything in exchange for his statement.

- This Court finds that the Defendant's statement was not the result of any threat or coercion.

- This Court finds that the Defendant did not remain silent or choose to remain silent during the interview.

- This Court finds that the Defendant did not request the presence of an attorney during the interview.

- This Court finds that the Defendant did not terminate the interview.

- This Court finds that the Defendant showed that he was able to speak and understand the English language.

- This Court finds that the Defendant did not claim that he had been diagnosed with any mental illness or learning deficiency.

- This Court finds that the [D]efendant's educational background and IQ did not prevent him from understanding his *Miranda and Tex. Code Crim. Pro. Art. 38,22* (sic) warnings.

- This Court finds that the Defendant understood his rights.

- This Court finds that the Defendant freely and voluntarily waived his rights.

- This Court finds that the Defendant freely and voluntarily participated in the interview.

Additionally, in its conclusions of law, the trial court determined that Texas Code of Criminal Procedure article 38.22 and *Miranda* apply where a person is subject to custodial interrogation. The trial court further concluded:

- Defendant's statements to Reynolds and Quintanilla, which followed the reading of his *Miranda and Tex. Code Crim. Pro. Art. 38.22* (sic) warnings, were given after he made a voluntary, knowing, and intelligent waiver of his rights. Defendant gave his statement freely and voluntarily.

15

- In compliance with Tex. Code Crim. Pro. Art. 38.22 (sic), the statement was recorded and provided to defense counsel at least 20 days in advance of trial.

### b. VOLUNTARINESS

The State bears the burden of establishing by a preponderance of the evidence that a defendant knowingly, intelligently, and voluntarily waived his *Miranda* rights. *Joseph v. State*, 309 S.W.3d 20, 24 (Tex. Crim. App. 2010); *Diamond v. State*, 496 S.W.3d 124, 137 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd). The statement of an accused may be used in evidence against him only if it appears that the statement was made freely and voluntarily, without compulsion or persuasion. *See* Tex. Code Crim. Proc. art. 38.21.

A waiver of rights may be inferred from the actions and words of the person interrogated. *Joseph*, 309 S.W.3d at 25. In evaluating whether appellant knowingly, intelligently, and voluntarily waived his *Miranda* rights, we use a two-pronged test, in which we ask: (1) whether the relinquishment of the right was voluntary by determining whether it was the product of a free and deliberate choice rather than intimidation, coercion, or deception, and (2) whether the waiver was made with full awareness of the nature of the rights being abandoned and the consequences of the decision to abandon them. *Id.* We look to the totality of the circumstances in determining whether a statement was made voluntarily. *Id.*

While not alone determinative, evidence of mental impairment is a factor to be considered by the factfinder in evaluating voluntariness. *Oursbourn v. State*, 259 S.W.3d 159, 173 (Tex. Crim. App. 2008); *Umana v. State*, 447 S.W.3d 346, 350 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd). A confession is involuntary if the totality of the circumstances demonstrate that the confessor did not make the decision to confess of his own free will. *Id.* at 351.

### c. APPLICATION

Appellant asserts that "any perceived waivers were not knowingly and intelligently given due to mental illness which prevented him from comprehending the significance of the waivers and overbearing his resistance to waiving them."

Appellant does not claim that his waiver was involuntary due to coercive police conduct. Thus, appellant's contention that his *Miranda* and/or Due Process rights were violated is foreclosed. A confession is involuntary "only when there is police overreaching." *Oursbourn*, 259 S.W.3d at 169; *Umana*, 447 S.W.3d at 350. "Absent police misconduct causally related to the confession, there is no deprivation of due process of law by a state actor and therefore no violation of the Due Process Clause." *Cevantes-Guervara v. State*, 532 S.W.3d 827, 833 (Tex. App.—Houston [14th Dist.] 2017, no pet.) (citing *Oursbourn*, 259 S.W.3d at 170; *Umana*, 447 S.W.3d at 350). Likewise, *Miranda* protects against government coercion to surrender Fifth Amendment rights. *Oursbourn*, 259 S.W.3d at 170; *Umana*, 447 S.W.3d at 350. Appellant concedes police coercion was not present here. *See Oursbourn*, 259 S.W.3d at 171; *Umana*, 447 S.W.3d at 350.

Unlike a claim of involuntariness under *Miranda*, appellant's claim that his waiver of rights under article 38.22 was involuntary need not be predicated on evidence of police overreaching. *See Leza v. State*, 351 S.W.3d 344, 352 (Tex. Crim. App. 2011). Under the totality of the circumstances test, many factors, including mental illness, may be relevant in determining whether a defendant's waiver of rights under Article 38.22 was voluntary—the product of his free and deliberate choice. *See Oursbourn*, 259 S.W.3d at 172–73; *Williams v. State*, 502 S.W.3d 262, 272 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd). "[T]he waiver must be made with a full awareness both of the nature of the right being abandoned and the

consequences of the decision to abandon it." *Leza*, 351 S.W.3d at 349 (internal citations omitted).

The question is whether the accused's mental impairment is so severe that he is incapable of understanding the meaning and effect of his confession. *See Casias v. State*, 452 S.W.2d 483, 488 (Tex. Crim. App. 1970). A defendant's mental condition, by itself and apart from its relation to official coercion, will never require a conclusion of involuntariness. *See Colorado v. Connelly*, 479 U.S. 157, 164 (1986). Thus, while not alone determinative, mental impairment is a factor in ascertaining the voluntariness of a confession. *See Penry v. State*, 903 S.W.2d 715, 744 (Tex. Crim. App. 1995).

It is undisputed that Deputy Quintanilla advised appellant of his *Miranda* and statutory rights. Appellant expressly waives his rights on the video recording. It also is undisputed that during the recording, appellant makes statements regarding malware, ransomware, and/or spyware. Although Sergeant Reynolds redirected appellant to the question, Sergeant Reynolds testified that appellant was "making sense." Sergeant Reynolds elaborated, stating that appellant was putting his words together and using full sentences; he was able to "conversate" and get his thought across.

In addition to the testimony adduced at the suppression hearing the trial court could have reasonably relied on appellant's rendition of the events of the day in question as supporting lucid thinking and voluntariness—appellant knew his date of birth, home address and the address of his mother; he explained that he needed to exit the decedent's garage after turning off the breaker and activating the generator; he stated that he realized he should not have been on the decedent's property; he attempted to conceal that he had been in the garage by lying to the decedent about having seen someone running away from the garage; he described the details of the

struggle with the decedent, telling the decedent not to reach for the gun, wrestling for the gun, being angry and wanting to hit the decedent, describing the words the decedent used while begging for his life,[5] and what he did with the gun after the shooting. Additionally, appellant expressed remorse and regret for killing the decedent, which are behaviors the trial court could have reasonably believed were indicative of awareness of the wrongfulness of the alleged conduct.[6] *See Valtierra*, 310 S.W.3d at 447–48 ("If the trial judge's decision is correct on any theory of law applicable to the case, however, it will be sustained.").

At the suppression hearing, the defense did not present any witnesses or offer any exhibits for the trial court's consideration. In determining whether the trial court's ruling on a motion to suppress is supported by the record, we generally consider only evidence adduced at the suppression hearing.[7] *See Perez v. State*, 495 S.W.3d 374, 387 (Tex. App.—Houston [14th Dist.] 2016, no pet.) ("[T]his Court may only consider evidence available to the trial court when it ruled on the motion to suppress.").

We conclude the trial court did not abuse its discretion in denying appellant's motion to suppress, as there is support in the record for the trial court's

---

[5] Sergeant Reynolds testified that appellant supplied information about decedent pleading "Please Jesus, I'm a preacher. Please Jesus I'm a minister. Please Jesus, I'm a cop" before appellant shot the decedent in the head.

[6] Moreover, the issue of appellant's voluntariness was presented to the jury. The jury was instructed to disregard appellant's confession if they did not believe that the confession was voluntary. *See Grayson v. State*, 438 S.W.2d 553, 555 (Tex. Crim. App. 1969) (upholding trial court's ruling that statement was admissible despite defendant's mental retardation and stating that the jury was given proper instruction to re-determine voluntariness: "Whether appellant had the mental competency or intelligence required to waive his right to remain silent and to have counsel present was for the court and the jury. The issue was fairly presented and resolved against appellant.").

[7] There is an exception to this rule if the parties consensually relitigate the suppression issue during trial. *See Perez*, 495 S.W.3d at 387. The record does not reflect that the parties agreed to do so here.

19

determinations of voluntariness. We must give deference to the trial court's factual finding that appellant's waiver of his rights during the recorded statement was the "free will" or "free choice" of appellant. The evidence does not reflect any overreaching or misconduct on the part of the police, and appellant does not argue that any occurred. *See Umana*, 447 S.W.3d at 356. The evidence shows that Deputy Quintanilla advised appellant of his *Miranda* rights and article 38.22 statutory rights; appellant had the basic reasoning skills to understand them, and voluntarily waived them; appellant did not give any indication that his educational background or mental capabilities prevented him from understanding Deputy Quintanilla's questions.

Accordingly, we conclude the totality of the circumstances here support the trial court's determination that any alleged mental illness of appellant did not render him incapable of understanding the meaning and effect of his waiver and confession and, thus, that both were voluntarily made. *See Umana*, 447 S.W.3d at 351. Accordingly, we conclude that the trial court did not err in denying appellant's motion to suppress and admitting appellant's recorded statement.

### d. HARM ANALYSIS

As set forth above, appellant conceded he was not coerced and did not lodge a federal complaint under *Miranda*. Rather, appellant's issue is based on the statutory requirement of voluntariness under article 38.22 of the Texas Code of Criminal Procedure. When only a statutory violation is claimed, the error must be treated as non-constitutional for the purpose of conducting a harm analysis under Texas Rule of Appellate Procedure 44.2(b). *Gray v. State*, 159 S.W.3d 95, 98 (Tex. Crim. App. 2005); Tex. R. App. P. 44.2(b). Rule 44.2(b) provides that: "Any other error, defect, irregularity, or variance that does not affect substantial rights must be disregarded." *See* Tex. R. App. P. 44.2(b)

20

Here, appellant's identification as the killer of the decedent was not in doubt because of other evidence admitted at trial that connected appellant to the murder. Without the recorded statement, the jury would know that the decedent, a 69-year-old bishop, went outside to see why someone was intruding on his property. Appellant struggled with the decedent, took the decedent's gun from him, and killed the decedent with the gun. Forensic evidence showed that one shot went off in the decedent's pocket and the other shot was made at a distance of at least two feet and went directly into the decedent's head. The appellant then took the gun and threw it into the trashcan in front of his mother's house before wandering around the neighborhood covered in the decedent's blood.

For these reasons we hold that even if there was error in the admission into evidence of appellant's video recorded statement, any such error would be harmless beyond a reasonable doubt. *See Dowthitt v. State*, 931 S.W.2d 244, 263 (Tex. Crim. App. 1996) (finding admission of a confession harmless under higher standard of constitutional harm, in part, because the physical evidence—appellant's fingerprints on a beer bottle that had the victim's blood on it and the murder weapon was a distinctive knife carried —strongly connected appellant to the murders without regard to any inconsistencies in his statements).

Appellant's second issue is overruled.

## B.    WITNESS SEQUESTRATION

In his third issue, appellant argues the trial court erred by excluding the presence of  Dr. Alissa Sherry, a clinical psychologist, during the testimony of Officer Quintanilla.

21

### 1. STANDARD OF REVIEW AND APPLICABLE LAW

"The procedure of excluding witnesses from the courtroom is commonly called putting the witnesses 'under the rule.'" *Russell v. State*, 155 S.W.3d 176, 179 (Tex. Crim. App. 2005); Tex. R. Evid. 614 (codifying the witness sequestration rule). "The purpose of placing witnesses under the rule is to prevent the testimony of one witness from influencing the testimony of another, consciously or not." *Russell,* 155 S.W.3d at 179; *Parks v. State*, 463 S.W.3d 166, 174 (Tex. App.— Houston [14th Dist.] 2015, no pet.).

Rule 614 of the Texas Rules of Evidence contains four exceptions to the witness exclusion requirement,[8] including an exception for "a person whose presence a party shows to be essential to presenting the party's claim or defense." Tex. R. Evid. 614(c); *Russell*, 155 S.W.3d at 180; *Parks*, 463 S.W.3d at 174. The party seeking to exempt a witness has the burden of showing that the witnesses' presence is essential and that the claimed exception applies. *Russell*, 155 S.W.3d at 180. Enforcement of the rule and its exceptions lies within the sound discretion of the trial court. *Id*. (citing *Caron v. State*, 162 S.W.3d 614, 618 (Tex. App.–Houston [14th Dist.] 2005, no pet.)); *see Lewis v. State*, 486 S.W.2d 104, 106 (Tex. Crim. App. 1972) (stating the trial court is vested with discretion and may permit expert witnesses to be exempt from the rule so they may hear other witnesses testify and then base their opinions on such testimony). A trial judge abuses his discretion if he acts arbitrarily or unreasonably without reference to any guiding rules or principles. *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990).

---

[8] Tex. R. Evid. 614 (a)-(d).

## 2. APPLICATION

Here, before Officer Quintanilla testified, defense counsel requested that Dr. Sherry be permitted to remain in the courtroom during the testimony of Officer Quintanilla, stating as follows:

> THE COURT:     You say she's a psychologist.  Are you asking her to remain because of somebody's testimony she needs to hear?
>
> [DEFENSE COUNSEL]: Yes, Your Honor.   I think one of the witnesses, the police officer of course, 'cause she's the expert.  That goes to the voluntariness of the statement.  Her testimony impacts that directly so this officer's testimony , some aspect of the statement as well as it gets deputy Donna Durham, who will testify as well who observed the defendant before this happened before he —-.
>
> THE COURT:     If she's going to testify to the voluntariness of the statement I don't understand why this Court, based on what I'm understanding she's rendered an opinion based on reviewing the recording.
>
> [DEFENSE COUNSEL]: She's reviewed the report and records as well and jail records and medical records, reviewed all that material but reviewing Donna Durham's statement because he (sic) was there during the interrogation.  Some of the things that happened off the video or anything of that nature she would also be able to be assisted in that as well but if the Court want her to remain outside —
>
> THE COURT:     What's the State's position?
>
> [THE STATE]:    I would object to her being in the courtroom.  If she's had an opportunity to view the video, which is the best evidence of what the defendant said that night and whether or not a statement's given voluntary anything that she surmises from deputy Quintanilla's testimony would be inflamed by questions  that [Defense counsel] is going to ask and have no relevance to her ability to view a video and [whether]the statement was waived voluntary (sic).

The trial court denied defense counsel's request that Dr. Sherry remain in the room when Officer Quintanilla testified.

The record does not reflect that Dr. Sherry did not have enough material to make an assessment. In making her assessment, Dr. Sherry reviewed appellant's interrogation video, "the various things that went on with regards to his arrest," who the police interviewed, appellant's Rusk Hospital records, his competency evaluation, his sanity evaluation, and the Harris County Jail records. Dr. Sherry diagnosed appellant with "paranoid schizophrenia" Given the range of information at her disposal, there is no indication that being present in the courtroom for Officer Quintanilla's trial testimony was necessary. The State expressed concern that the defense counsel's questions to Officer Quintanilla could signal to Dr. Sherry what her testimony should contain. Although appellant argues in his brief that he was harmed by the expert not being able to sit in on the testimony of his mother, this was not the trial court's ruling. The trial court only ordered Dr. Sherry to step out when Officer Quintanilla testified.

We conclude the trial judge properly balanced the policies behind the Rule when excluding Dr. Sherry from being present during the testimony of Officer Quintanilla. We cannot say that appellant has adequately demonstrated that the trial court abused its discretion in doing so. *See* Tex. R. Evid. 614.

Appellant's third issue is overruled.

## III.   Conclusion

The trial court's judgment is affirmed.


/s/     Margaret "Meg" Poissant
Justice

Panel consists of Justices Wise, Jewell, and Poissant.
Do Not Publish – Tex. R. App. P. 47.2(b).

24